**DEREK SMITH LAW GROUP, PLLC**
ERICA A. SHIKUNOV, ESQUIRE
Attorney ID No. 316841
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
erica@dereksmithlaw.com
*Attorneys for Plaintiffs and the Proposed Classes*

|  |  |
|---|---|
| JOSEPH O'REILLY, RICHARD TRESTON, JANIE DIPASQUALE, NICK DIPASQUALE, MICHAEL CAHILL, HORACE LOPEZ, JUSTIN O'BRIEN, BRIAN QUIRPLE, WILLIAM SUAREZ, JAMES ZIMMERMAN, DENNIS BAKER, RODNEY POLIARD, KENNETH KUSTRA, JOSEPH MANGOLD, EDWARD MOYER, JOHN SNYDER, SEAN ELKINS, PAUL SULOCK and  CURTIS HILL, *individually and on behalf of others similarly situated*, | CIVIL ACTION NO.   **CLASS/COLLECTIVE ACTION COMPLAINT**   JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| CITY OF PHILADELPHIA, | |
| Defendant. | |

## <u>INTRODUCTION</u>

1. Named Plaintiffs ("Plaintiffs"), individually and on behalf of others similarly situated, bring this class and collective action lawsuit against Defendant, the City of Philadelphia ("Defendant"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 42 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*. and Pennsylvania common law.

2. Plaintiff's claims are asserted as a collective action under 29 U.S.C. § 216(b), while their Pennsylvania state law claims are asserted as a statewide class action under Federal Rule of Civil Procedure 23. See Knepper v. Rite Aid Corp., 675 F.3d 249 (3d Cir. 2012) (FLSA collective and Rule 23 class claims may proceed together).

## NATURE OF THE ACTION

3. Plaintiffs bring this Complaint on behalf of themselves and all others similarly situated, contending that Defendant has improperly failed to pay overtime compensation to City of Philadelphia K9 officers for the at home care and training provided to their police dogs ("K9 Partners") pursuant to the FLSA, PMWA, WPCL and Pennsylvania common law.

4. Plaintiffs are current and/or former City of Philadelphia police officers in the K9 unit, as are their similarly situated colleagues. Plaintiffs, as well as their similarly situated colleagues, reside with their K9 Partners. On a daily basis, K9 officers are expected to walk and exercise their K9 Partners several times per day, feed their K9 Partners twice per day, groom, train, arrange veterinary care and ensure that the home and property are secure and that their K9 Partners cannot escape, amongst other tasks. Depending on the temperament of the K9 Partner, officers need to ensure that the K9 Partner is compatible with other human and animal residents of the home and take means to secure the K9 Partner when they are not home with them. Because the K9 Partners reside with their assigned officer, the care for the K9 Partner occurs every day- before and after an officer's shift, on days that the officer is not working and on holidays. It is well settled law that K9 officers are entitled to overtime pay for caring for the K9 Partners (and, upon information and belief, Defendant does pay overtime to K9 officers who work with the Sherriff's Department). Defendant has failed to pay proper overtime compensation to City of Philadelphia K9

officers despite the issue having been raised through internal complaints, grievances, and references to both the Sherriff's Department K9 officers and Philadelphia Airport K9 officers.

5.  Plaintiffs bring this action to recover unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties and damages owed to Plaintiffs and all similarly situated current and former City of Philadelphia K9 officers.

6.  At all relevant times, Defendant's violations of the FLSA, PMWA, WPCL and Pennsylvania common law were willful.

## JURISDICTION AND VENUE

7.  Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8.  Supplemental Jurisdiction over Plaintiffs' PMWA and WPCL claims is proper under 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiffs' FLSA claims.

9.  Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11. Officer O'Reilly is an adult individual residing in the Commonwealth of Pennsylvania.

12. Officer Treston is an adult individual residing in the Commonwealth of Pennsylvania.

13. Officer Janie DiPasquale is an adult individual residing in the Commonwealth of Pennsylvania.

14. Officer Nick DiPasquale is an adult individual residing in the Commonwealth of Pennsylvania.

15. Officer Cahill is an adult individual residing in the Commonwealth of Pennsylvania.

16. Officer Lopez is an adult individual residing in the Commonwealth of Pennsylvania.

17. Officer O'Brien is an adult individual residing in the Commonwealth of Pennsylvania.

18. Officer Quirple is an adult individual residing in the Commonwealth of Pennsylvania.

19. Officer Suarez is an adult individual residing in the Commonwealth of Pennsylvania.

20. Officer Zimmerman is an adult individual residing in the Commonwealth of Pennsylvania.

21. Officer Baker is an adult individual residing in the Commonwealth of Pennsylvania.

22. Officer Poliard is an adult individual residing in the Commonwealth of Pennsylvania. Officer Kustra is an adult individual residing in the Commonwealth of Pennsylvania.

23. Officer Mangold is an adult individual residing in the Commonwealth of Pennsylvania.

24. Officer Moyer is an adult individual residing in the Commonwealth of Pennsylvania.

25. Officer Snyder is an adult individual residing in the Commonwealth of Pennsylvania.

26. Officer Elkins is an adult individual residing in the Commonwealth of Pennsylvania.

27. Officer Sulock is an adult individual residing in the Commonwealth of Pennsylvania.

28. Officer Hill is an adult individual residing at in the Commonwealth of Pennsylvania.

29. At all relevant times, Officer O'Reilly and his similarly situated colleagues were and have continued to be employees of Defendant and entitled to the protections of the FLSA, PMWA and WPCL.

30. Pursuant to Section 216(b) of the FLSA, Plaintiffs have consented in writing to be plaintiffs in this action. Plaintiffs' collectively executed Consent to Sue forms are attached hereto as Exhibit "A".

31. Defendant City of Philadelphia ("Defendant") is a municipality of the Commonwealth of Pennsylvania. Defendant owns, operates, manages, directs and controls the Philadelphia Police Department ("the PPD"), whose agents, servants and employees at all relevant times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies, customs or practices of Defendant and the PPD.

32. Defendant, through the PPD employs approximately 29 K9 officers, and several others have recently retired.

33. At all relevant times, Defendant has been an employer covered by the FLSA, PMWA and WPCL and were required to comply with the wage and hour mandates therein.

34. At all relevant times, Defendant acted or failed to act through their agents, servants and/or employees, each of whom was acting at all relevant times within the course and scope of their employment for Defendant.

35. Defendant systematically and willfully denied its K9 officers overtime compensation wages due and owing under the FLSA, PMWA and WPCL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

36. Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiffs bring this action individually and on behalf of all other similarly situated persons presently or formerly employed by Defendant as K9 officers performing similar responsibilities for Defendant at any time during the past three (3) years who were denied overtime compensation for hours worked

caring for their K9 Partners (the members of the putative class are hereinafter referred to as "Collective Class Plaintiffs").

37. Plaintiffs estimate that there are several other similarly situated Collective Class Plaintiffs who are working or worked for Defendant and are or were unlawfully denied overtime compensation at 1.5 times their "regular rate" of pay for hours worked caring for their K9 Partners at home. The precise number of employees can be easily ascertained by Defendant. These employees can be identified and located using Defendants' payroll and personnel records. Potential Collective Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

38. Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because all the class members are similarly situated. Plaintiffs and other similarly situated employees were similarly denied overtime compensation for hours worked in caring for their K9 Partners, had the same or substantially similar job classifications and duties, and were subject to the same uniform policies, business practices, payroll practices, and operating procedures. Further, Defendant's willful policies and practices, which are discussed more fully below, whereby Defendant failed to pay Plaintiffs and Collective Class Plaintiffs overtime compensation for hours spent caring for their K9 Partners, have affected Plaintiffs and Collective Class Plaintiffs in the same fashion.

39. In violation of the FLSA, Defendant failed to pay Plaintiffs and Collective Class Plaintiffs overtime compensation for hours worked caring for their K9 Partners.

40. In violation of the FLSA, Defendant also failed to rectify the issue when Plaintiffs and Collective Class Plaintiffs complained about the matter internally, filed grievances or

pointed to their similarly situated peers who were being compensated appropriately for caring for their K9 Partners.

41. Specifically, Defendant, through the Sherriff's Department, employs approximately four additional K9 officers.

42. Defendant's K9 officers who work for the Sherriff's department have similar duties and work very similar straight and overtime hours as Plaintiffs and Collective Class Plaintiffs.

43. The duties the K9 officers in the Defendant's Sherriff's department perform caring for their K9 Partners at home is essentially identical to the work performed by Plaintiffs and Collective Class Plaintiffs- including but not limited to: walking, exercising, feeding, training, grooming, coordinating veterinary care, ensuring the home and property are secure for the K9 Partner and that the K9 Partner cannot escape, among other tasks and duties.

44. Plaintiffs and Collective Class Plaintiffs have pointed to their colleagues in the Sherriff's department, identifying that Defendant pays those K9 officers two hours of overtime per day for the same work that Plaintiffs and Collective Class Plaintiffs perform, but still, Defendant has refused to pay Plaintiffs and Collective Class Plaintiffs any overtime for the at home care of their K9 Partners.

45. Upon information and belief, the K9 officers working for the Sherriff's Department receive approximately two hours of overtime pay, per day, for caring for their K9 Partners at home.

46. K9 officers working for the Sherriff's Department are employed and compensated by Defendant.

47. Defendant, through the PPD, also employs an additional 11 K9 Officers at the Philadelphia Airport.

48. The K9 officers employed at Philadelphia Airport also perform essentially identical work as Officer O'Reilly and Collective Class Plaintiffs including but not limited to: walking, exercising, feeding, training, grooming, coordinating veterinary care, ensuring the home and property are secure for the K9 Partner and that the K9 Partner cannot escape, among other tasks and duties.

49. Upon information and belief, the K9 officers at the airport also receive two hours of overtime pay per day for caring for their K9 Partners at home, but a portion of their wages are paid for by the Transportation Security Administration.

50. In violation of the provisions of the FLSA, despite Defendant being aware that Plaintiffs and Collective Class Plaintiffs were entitled to overtime pay for caring for their K9 Partners, Defendant intentionally and willfully failed to provide overtime compensation to its 29 active K9 officers.

51. In 2018 Plaintiffs and Collective Class Plaintiffs filed a union grievance against Defendant, requesting that they receive the same overtime pay as do their similarly situated counterparts. To date, Plaintiffs and Collective Class Plaintiffs have not received any overtime compensation for the care and treatment of their K9 Partners.

52. Due to the grievance and the fact that the Defendant pays the Sherriff's Department K9 officers two hours of overtime pay per day for the at home care of their K9 Partners, it is clear that Defendant's conduct in failing to properly compensate Plaintiffs and their similarly situated peers is and has been willful.

53. Plaintiffs will request the Court to authorize notice to all current and former similarly situated employees employed by Defendant, informing them of the pendency of this action and their right to "opt in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of

seeking unpaid wages, overtime compensation, liquidated damages, attorneys' fees, and all other relief available under the FLSA.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this action individually and on behalf of the following state-wide class of similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons presently or formerly employed by Defendant who worked for Defendant as a PPD K9 officer during the last three (3) years who were denied overtime compensation for hours worked caring for their K9 Partners at home (the members of the putative class are hereinafter referred to as "Pennsylvania Class Plaintiffs").

55. The members of the class are so numerous that joinder of all members is impractical. Pennsylvania Class Plaintiffs may be informed of the pendency of this class action by direct mail.

56. Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are questions of law and fact common to the Class, including but not limited to:

   a. Whether Plaintiffs and the Pennsylvania Class Plaintiffs were improperly denied overtime compensation;

   b. Whether Plaintiffs and the Pennsylvania Class Plaintiffs are entitled to overtime compensation for the care, training, feeding, veterinary, ect. provided to their K9 Partners at home, on their own time;

   c. Whether Plaintiffs and Pennsylvania Class Plaintiffs have suffered and are entitled to damages, and if so, in what amount;

   d. Whether Defendants failed to pay Plaintiffs and the Pennsylvania Class Plaintiffs overtime wages in the period when said wages became due and owing in violation of the PMWA, WPCL and Pennsylvania common law; and

   e. Whether Plaintiffs and the Pennsylvania Class Plaintiffs are entitled to liquated damages.

57. Plaintiffs' claims are typical of the claims of the Pennsylvania Class Plaintiffs. Plaintiffs worked for Defendant as hourly, non-exempt K9 officers and has suffered similar injuries

as those suffered by the Pennsylvania Class Plaintiffs as a result of Defendants' failure to pay overtime compensation. Defendants' conduct of violating the PMWA, WPCL and Pennsylvania common law has affected Plaintiffs and the Pennsylvania Class Plaintiffs in the exact same way.

58. Plaintiffs will fairly and adequately represent and protect the interest of the Pennsylvania Class Plaintiffs. Plaintiffs are similarly situated to the Pennsylvania Class Plaintiffs and have no conflicts with the members of the Pennsylvania Class Plaintiffs.

59. Plaintiffs are committed to pursuing this action and have retained competent counsel.

60. Pursuant to Rules 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff's Pennsylvania state law claims are properly maintained as a class action because:

   a. The prosecution of separate actions by or against individual members of the Pennsylvania Class Plaintiffs would create a risk of inconsistent or varying adjudication with respect to individual members of the Pennsylvania Class Plaintiffs that would establish incompatible standards of conduct for Defendant;

   b. Defendant, by failing to pay minimum wages and/or overtime compensation when they became due and owing in violation of the PMWA, WPCL and Pennsylvania common law, has acted or refused to act on grounds generally applicable to the Pennsylvania Class Plaintiffs, thereby making the requested relief appropriate with respect to the Pennsylvania Class Plaintiffs as a whole; and

   c. The common questions of law and fact set forth above applicable to the Pennsylvania Class Plaintiffs predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this case, especially with respect to considerations of consistency, economy, efficiency, fairness and equity, as compared to other available methods for the fair and efficient adjudication of this controversy.

61. A class action is also superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impractical. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary

duplication of effort and expense if these claims were brought individually. Additionally, the expenses and burden of individual litigation would make it difficult for the Pennsylvania Class Plaintiffs to bring individual claims. The presentation of separate actions by individual Pennsylvania Class Plaintiffs could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of each member of the Pennsylvania Class Plaintiffs to protect his or her interests.

## FACTUAL BACKGROUND

62. Plaintiffs repeat every allegation made in the above paragraphs of this complaint.

63. Collective Class Plaintiffs and Pennsylvania Class Plaintiffs are hereinafter collectively referred to as "Class Plaintiffs."

64. Class Plaintiffs were hired by Defendant as police offers and were ultimately assigned to the K9 Unit.

65. Class Plaintiffs are expected to live with their K9 Partners and provide care for them outside of work hours.

66. K9 Partners are not pets. They are working dogs and come with their own set of safety hazards and requirements. K9 Partners are highly trained, highly intelligent dogs who are trained to bite or otherwise subdue suspects on command, requiring additional care and precautions than other dogs who may be kept as pets. Care for K9 Partners includes, but is not limited to, walking and exercising the dogs multiple times on a daily basis, feeding, grooming, training, coordinating veterinary care, ensuring that the dogs interact safely with all other residents of the home human or animal, securing the home and ensuring it remains secure so the dog cannot get out, and other responsibilities.

67. Class Plaintiffs are expected to engage in these responsibilities every day of the week, before and after their scheduled shift and on scheduled days off as the care, health and safety of the K9 Partner is the K9 officer's responsibility.

68. To demonstrate the amount of overtime owed to Class Plaintiffs, as well as why Plaintiffs are appropriate class and collective representatives and that the claims are best brought as class/collective claims, Plaintiffs hereby submit summaries of a sample week of off the clock work:

69.  Plaintiff Joseph O'Reilly has two K9 Partners. He works alternating shifts and has two days off per week. A typical week of off the clock work for Plaintiff Joseph O'Reilly would include:

   a. On his five scheduled work days: Before Plaintiff Joseph O'Reilly's evening shifts his K9 Partners are let out and the yard is cleaned totaling 30 minutes. The K9 Partners are walked for 30 minutes. The K9 Partners are fed, taking 30 minutes. They are let out and the yard cleaned taking 20 minutes. After his shift they are let out and the yard cleaned one more time taking 30 minutes. On days that Plaintiff Joseph O'Reilly works the morning shift the same tasks are performed, but in the opposite order to keep the K9 Partners on schedule. **This is approximately two hours and 20 minutes of off the clock work for each of the above-listed days for which Plaintiff Joseph O'Reilly is not compensated.**

   b. On his scheduled off days- Approximately two and a half hours are spent walking or otherwise exercising the K9 Partners. An additional 30 minutes are spent feeding the K9 Partners. 45 minutes are spent cleaning the home and vehicle of dog debris. Another 30 minutes is spent on grooming one of the days. **This is approximately**

**three hours and 45 minutes of off the clock work for which Plaintiff Joseph O'Reilly is not compensated on each day and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight with another animal or human member of the home due to their dominance traits and training. Officer O'Reilly has dealt with fights in his home including one where his mother in law was injured.

70. Throughout the course of Plaintiff Joseph O'Reilly's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

71. Plaintiff Richard Treston has two K9 Partners. A typical week of off the clock work for Plaintiff Richard Treston would include:

   a. Monday, Tuesday, Thursday: Before Plaintiff Richard Treston's scheduled shift the K9 Partners are walked or placed in the yard and observed for 30 minutes. After Plaintiff Richard Treston clocks out the K9 Partners are walked or placed in the yard and observed for 30 minutes. An additional 45 minutes is spent preparing food and observing meal time to ensure there are no fights over food. The den is vacuumed daily for dog hair as the dogs spend the majority of home time in this room which takes approximately 20 minutes. The K9 Partners are quickly let out for an additional 10 minute break in the yard, under observation, before going to bed. **This is approximately two hours and 15 minutes of off the clock work for each of the above-listed days for which Plaintiff Richard Treston is not compensated.**

13

b.  Wednesday and Friday: Before Plaintiff Richard Treston's scheduled shift the dogs are walked or placed in the yard and observed for 30 minutes. After Plaintiff Richard Treston clocks out the K9 Partners are walked or placed in the yard and observed for 30 minutes. An additional 45 minutes is spent preparing food and observing meal time to ensure there are no fights over food. The den is vacuumed daily for dog hair as the K9 Partners spend the majority of home time in this room which takes approximately 20 minutes. On Wednesdays and Fridays and additional 30 minutes is spent applying a three time per week medical cream for the K9 Partners' allergies. The dogs are quickly let out for an additional 10-minute break in the yard, under observation, before going to bed. **This is approximately two hours and 45 minutes of off the clock work for each of the above-listed days for which Plaintiff Richard Treston is not compensated.**

c.  Saturday and Sunday- These are Plaintiff Treston's scheduled days off. Approximately an hour and 40 minutes is spent walking or otherwise exercising the K9 Partners in the yard as well as cleaning the yard of dog waste. An additional 45 minutes is spent preparing food and observing meal time to ensure there are no fights over food. Thirty minutes is spent cleaning and vacuuming the home of dog debris. Thirty minutes are spent on grooming and applying medical cream for allergies *on Sunday only*. **This is approximately two hours and 55 minutes of unpaid work on Saturdays and three hours and 25 minutes of off the clock work on Sundays for which Plaintiff Treston is not compensated.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet

14

visits or if the K9 Partner gets into a fight with another animal or human member of the home due to their dominance traits and training.

72. Throughout the course of Plaintiff Richard Treston's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

73. Plaintiff Janie DiPasquale has two K9's in the home but primarily cares for one (Plaintiff Nick DiPasquale cares primarily for the other, some responsibilities overlap and some do not). A typical week of off the clock work for Plaintiff Janie DiPasquale would include:

   a. Monday-Friday: Before Plaintiff Janie DiPasquale's scheduled shift her K9 Partner is walked or placed in the kennel and observed for 30 minutes. The kennel is disinfected and the K9 Partner is loaded in the car to travel to work comprising an additional 45 minutes. After Plaintiff Janie DiPasquale clocks out the K9 Partner is walked or placed in the yard and observed for 30 minutes, two times (once immediately upon arriving home and once before bed). The kennel is disinfected again when the K9 Partners are brought in. An additional 30 minutes is spent preparing food and observing meal time to ensure there are no fights over food (there are other animals in the home in addition to the K9 Partners). **This is approximately two hours and 45 minutes of off the clock work for each of the above-listed days for which Plaintiff Janie DiPasquale is not compensated.**

   b. Saturday and Sunday- These are Plaintiff Janie DiPasquale's scheduled days off. Approximately two hours and ten minutes is spent walking, throwing the ball, doing article searches or otherwise exercising the K9 Partners in the yard as well as cleaning the yard of dog waste. An additional 30 minutes is spent preparing food and observing meal time to ensure there are no fights over food. Thirty minutes is

spent cleaning and vacuuming the home and car of dog debris. Thirty minutes are spent on grooming. **This is approximately three hours and fifty minutes of off the clock work for which Plaintiff Janie DiPasquale is not compensated on each day.**

c. **Plaintiff Janie DiPasquale has also been Injured on Duty. Even while Injured on Duty she continues to have the same care responsibilities for her K9 Partners for which she is not compensated.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partners get into a fight with one another or another animal or human member of the home due to their dominance traits and training.

74. Throughout the course of Plaintiff Janie DiPasquale's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

75. Plaintiff Nick DiPasquale has two K9 Partners in the home but primarily cares for one (Plaintiff Janie DiPasquale cares primarily for the other, some responsibilities overlap and some do not). Plaintiff Nick DiPasquale does not have a day-specific schedule, but works five days on, two days off on the midnight shift. A typical week of off the clock work for Plaintiff Nick DiPasquale would include:

a. On his five scheduled work days: Before Plaintiff Nick DiPasquale's scheduled shift his K9 Partner is walked or placed in the kennel and observed for 30 minutes. The kennel is disinfected and the K9 Partner is loaded in the car to travel to work comprising an additional 45 minutes. After Plaintiff Nick DiPasquale clocks out the K9 Partner is walked or placed in the yard and observed for 30 minutes, two

times (once immediately upon arriving home and once before bed). The kennel is disinfected again when the K9 Partners are brought in. An additional 30 minutes is spent preparing food and observing meal time to ensure there are no fights over food (there are other animals in the home in addition to the K9 Partners). Plaintiff Nick DiPasquale's K9 Partner has severe allergies which require careful grooming, oral medication, topical medication and injections which take an additional 30 minutes per day to administer. **This is approximately three hours and 15 minutes of off the clock work for each of the above-listed days for which Plaintiff Nick DiPasquale is not compensated.**

b.  Two scheduled off days- Approximately two hours and ten minutes is spent walking, throwing the ball, or otherwise exercising the K9 Partners in the yard. An additional 30 minutes is spent preparing food and observing meal time to ensure there are no fights over food. Thirty minutes is spent cleaning and vacuuming the cars and crates of dog debris. Plaintiff Nick DiPasquale's K9 Partner has severe allergies which require careful grooming, oral medication, topical medication and injections which take an additional 30 minutes per day to administer.  **This is approximately three hours and forty minutes of off the clock work for which Plaintiff Nick DiPasquale is not compensated on each day.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partners in the home outside of vet visits or if the get into a fight with one another or another animal or human member of the home due to their dominance traits and training.

76. Throughout the course of Plaintiff Nick DiPasquale's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

77. Plaintiff Michael Cahill has one K9 partner in the home. A typical week of off the clock work for Plaintiff Michael Cahill would include:

   a. Monday-Friday: Before Plaintiff Michael Cahill's scheduled shift his K9 Partner is walked and fed totaling approximately 30-40 minutes. After Plaintiff Michael Cahill's shift, his K9 Partner has two walks and a session of play/yard exercise which total another hour and ten minutes. Feeding the K9 Partner takes approximately 20 minutes. 30 minutes are spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes is spent on grooming. **This is approximately two hours and fifty-five minutes of off the clock work for each of the above-listed days for which Plaintiff Michael Cahill is not compensated.**

   b. Saturday and Sunday- These are Plaintiff Michael Cahill's scheduled days off. Approximately two hours and a half hours are spent walking, throwing the ball, or otherwise exercising the K9 Partner. An additional 40 minutes are spent feeding the K9 partner once in the morning and once in the evening. 30 minutes are spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes is spent on grooming. Another 30 minutes is spent cleaning the car of dog debris once per week.  **This is approximately three hours and 55 minutes of off the clock work for which Plaintiff Michael Cahill is not compensated on each day, and an additional 30 minutes on one of the days.**

   This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet

visits or if the K9 Partner gets into a fight with another animal or human member of the home due to their dominance traits and training.

78. Throughout the course of Plaintiff Michael Cahill's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

79. Plaintiff Horace Lopez has one K9 partner in the home. Plaintiff Horace Lopez is scheduled five days on and two days off. A typical week of off the clock work for Plaintiff Horace Lopez would include:

   a. On his five scheduled work days: Before Plaintiff Horace Lopez's scheduled shift his K9 Partner is groomed, walked and fed totaling approximately 40 minutes. After Plaintiff Horace Lopez's shift, his K9 Partner has two longer walks because Plaintiff Horace Lopez does not have a fenced in yard, totaling an hour and ten minutes. Feeding the K9 Partner takes approximately 30 minutes. **This is approximately two hours and 20 minutes of off the clock work for each of the above-listed days for which Plaintiff Horace Lopez is not compensated.**

   b. On his scheduled off days- Approximately two and a half hours are spent walking, or otherwise exercising the K9 Partner. An additional 30 minutes are spent feeding the K9 Partner. 30 minutes are spent cleaning the home and vehicle of dog debris. Another 15 minutes is spent on grooming. **This is approximately three hours and 45 minutes of off the clock work for which Plaintiff Horace Lopez is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet

visits or if the K9 Partner gets into a fight with another animal or human member of the home due to their dominance traits and training.

80. Throughout the course of Plaintiff Horace Lopez's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

81. Plaintiff Justin O'Brien has one K9 partner in the home.  A typical week of off the clock work for Plaintiff Justin O'Brien would include:

   a.  Monday through Friday: Before Plaintiff Justin O'Brien's scheduled shift his K9 Partner is walked and fed totaling approximately 30 minutes. After Plaintiff Justin O'Brien's shift, his K9 Partner has one long walk and one session of play time totaling an additional hour. The K9 Partner is fed again which takes approximately 15 minutes. The K9 Partner is groomed taking ten to 15 minutes and the house and yard are cleaned of dog debris daily totaling another 30 minutes. **This is approximately two hours and 30 minutes of off the clock work for each of the above-listed days for which Plaintiff Justin O'Brien is not compensated.**

   b.  On Saturdays and Sundays- These are Plaintiff Justin O'Brien's scheduled days off. Approximately two and a half hours are spent walking, or otherwise exercising the K9 Partner. An additional 30 minutes are spent feeding the K9 Partner. 30 minutes are spent cleaning the home and yard of dog debris and the vehicle is cleaned of dog debris once per week taking 30 minutes. Another 15 minutes is spent on grooming. **This is approximately three hours and 45 minutes of off the clock work for which Plaintiff Justin O'Brien is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the dogs in the home outside of vet visits or if the dogs get into a fight with one another or another animal or human member of the home due to their dominance traits and training.

82. Throughout the course of Plaintiff Justin O'Brien's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

83. Plaintiff Brian Quirple has one K9 partner in the home.  A typical week of off the clock work for Plaintiff Brian Quirple would include:

   a. Monday through Friday: Before Plaintiff Brian Quirple's scheduled shift his K9 Partner is walked and fed totaling approximately 30 minutes. After Plaintiff Brian Quirple's shift, his K9 Partner has two long walks and one session of play time totaling an additional hour and 20 minutes. The K9 Partner is fed again which takes approximately 15 minutes. The K9 Partner is groomed taking ten to 15 minutes and the house and yard are cleaned of dog debris daily totaling another 30 minutes. **This is approximately two hours and 50 minutes of off the clock work for each of the above-listed days for which Plaintiff Justin O'Brien is not compensated.**

   b. On Saturdays and Sundays- These are Plaintiff Brian Quirple's scheduled days off. Approximately two and a half hours are spent walking, or otherwise exercising the K9 Partner. An additional 30 minutes are spent feeding the K9 Partner. 30 minutes are spent cleaning the home and yard of dog debris and the vehicle is cleaned of dog debris once per week taking 30 minutes. Another 15 minutes is spent on grooming. **This is approximately three hours and 45 minutes of off the clock**

**work for which Plaintiff Brian Quirple is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight another animal or human member of the home due to their dominance traits and training.

84. Throughout the course of Plaintiff Brian Quirple's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

85. Plaintiff William Suarez has one K9 partner in the home.  A typical week of off the clock work for Plaintiff William Suarez would include:

a. Monday through Friday: Before Plaintiff William Suarez' scheduled shift his K9 Partner is walked and fed totaling approximately 45 minutes. After Plaintiff William Suarez' shift, his K9 Partner has two additional walks/exercise sessions that totaling about 40 minutes. The K9 Partner is groomed taking 20 minutes and the house and yard are cleaned of dog debris daily totaling another 30 minutes. **This is approximately two hours and 15 minutes of off the clock work for each of the above-listed days for which Plaintiff William Suarez is not compensated.**

b. On Saturdays and Sundays- These are Plaintiff William Suarez' scheduled days off. Approximately two hours are spent walking, or otherwise exercising the K9 Partner. An additional 15 minutes are spent feeding the K9 Partner. 30 minutes are spent cleaning the home and yard of dog debris and the vehicle is cleaned of dog debris once per week taking 30 minutes. Another 30 minutes is spent on bathing and grooming. **This is approximately three hours and 45 minutes of off the**

**clock work for which Plaintiff William Suarez is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight another animal or human member of the home due to their dominance traits and training.

86. Throughout the course of Plaintiff William Suarez' employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

87. Plaintiff James Zimmerman has one K9 partner in the home.  A typical week of off the clock work for Plaintiff James Zimmerman would include:

    a. Monday through Friday: Before Plaintiff James Zimmerman's scheduled shift his K9 Partner is walked totaling approximately 30 minutes. After Plaintiff James Zimmerman's shift, his K9 Partner is fed totaling 30 minutes. He gets an additional walk as well as a play session totaling an hour altogether. The K9 Partner is groomed taking 20 minutes and the house and yard are cleaned of dog debris daily totaling another 30 minutes. **This is approximately two hours and 50 minutes of off the clock work for each of the above-listed days for which Plaintiff James Zimmerman is not compensated.**

    b. On Saturdays and Sundays- These are Plaintiff James Zimmerman's scheduled days off. Approximately two and a half hours are spent walking, or otherwise exercising the K9 Partner. 40 minutes are spent feeding the K9 Partner (once in the morning and once at night). 30 minutes are spent cleaning the home and yard of dog debris and the vehicle is cleaned of dog debris once per week taking 30 minutes.

23

Another 30 minutes is spent on grooming. **This is approximately four hours and 10 minutes of off the clock work for which Plaintiff James Zimmerman is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight another animal or human member of the home due to their dominance traits and training.

88. Throughout the course of Plaintiff James Zimmerman's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

89. Plaintiff Dennis Baker has one K9 partner in the home.  A typical week of off the clock work for Plaintiff Dennis Baker would include:

a. Monday through Friday: Before Plaintiff Dennis Baker's scheduled shift his K9 Partner is walked taking 30 minutes and then fed (which takes an additional 25 minutes as his food must be specially prepared to include medication and his eating must be observed to ensure he consumes the medication). After Plaintiff Dennis Baker's shift, his K9 Partner is fed totaling 25 minutes. He gets an additional walk as well as a play session totaling an hour altogether. The K9 Partner is groomed taking 20 minutes and the house and yard are cleaned of dog debris daily totaling another 15 minutes. **This is approximately two hours and 55 minutes of off the clock work for each of the above-listed days for which Dennis Baker is not compensated.**

b. On Saturdays and Sundays- These are Plaintiff Dennis Baker's scheduled days off. Approximately an hour and a half is spent walking, or otherwise exercising the K9

Partner. 50 minutes are spent feeding the K9 Partner (once in the morning and once at night). 15 minutes are spent cleaning the home and yard of dog debris and the vehicle is cleaned of dog debris once per week taking 30 minutes. Another 40 minutes is spent on grooming. **This is approximately three hours and 15 minutes of off the clock work for which Plaintiff Dennis Baker is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight another animal or human member of the home due to their dominance traits and training.

90. Throughout the course of Plaintiff Dennis Baker's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

91. Plaintiff Rodney Poliard has one K9 partner in the home. Plaintiff Rodney Poliard works a schedule of combination night and day shifts with five days on and two days off. A typical week of off the clock work for Plaintiff Rodney Poliard would include:

   a. Days worked on Day Shift: Before Plaintiff Rodney Poliard's scheduled shift his K9 Partner is walked for 30 minutes. After Plaintiff Rodney Poliard's shift, his K9 Partner is fed totaling 25 minutes. He gets two walks as well as a play session totaling an hour and a half altogether. The K9 Partner is groomed taking 20 minutes and the house and yard are cleaned of dog debris daily totaling another 15 minutes. **This is approximately three hours of off the clock work for each of the above-listed days for which Plaintiff Rodney Poliard is not compensated.**

b.  Days worked on Night Shift: Before Plaintiff Rodney Poliard's scheduled shift the K9 Partner is walked two times and gets play time totaling approximately an hour. He is also fed (25 minutes) and groomed (20 minutes). After the shift, the K9 Partner is walked quickly before going to sleep totally another 20 minutes. **This is approximately two hours and five minutes of off the clock work for each of the above-listed days for which Plaintiff Rodney Poliard is not compensated.**

c.  On Days Off: The K9 Partner gets three walks and a play session totaling approximately two and a half hours. 25 minutes are spent feeding the K9 Partner. 15 minutes are spent cleaning the home and yard of dog debris and the vehicle is cleaned of dog debris once per week taking 30 minutes. Another 20 minutes is spent on grooming. **This is approximately four hours of off the clock work for which Plaintiff Rodney Poliard is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight another animal or human member of the home due to their dominance traits and training.

92. Throughout the course of Plaintiff Rodney Poliard's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

93. Plaintiff Kenneth Kustra has one K9 partner in the home. Plaintiff Kenneth Kustra works a schedule of combination night and day shifts with five days on and two days off. A typical week of off the clock work for Plaintiff Kenneth Kustra would include:

a. Days worked on Day Shift: Before Plaintiff Kenneth Kustra's scheduled shift his K9 Partner is let out for 20 minutes. He must be observed during this time because the yard is not fenced. He is brought inside and fed and his bowl is cleaned taking an additional 20 minutes. His medication is then administered taking 10 minutes. After Plaintiff Kenneth Kustra's shift, his K9 Partner is fed and given his medication again taking another 20-30 minutes. He is let out for exercise and to relieve himself three separate times totaling an hour. The yard is cleaned and the carpets vacuumed daily taking 25 minutes. **This is approximately two hours and 35 minutes of off the clock work for each of the above-listed days for which Plaintiff Kenneth Kustra is not compensated.**

b. Days worked on Night Shift: Before Plaintiff Kenneth Kustra's scheduled shift the K9 Partner is walked two times and gets play time in the yard twice totaling approximately an hour and 20 minutes. He is also fed, (20 minutes), given his medication (10 minutes) and groomed (20 minutes). The yard is cleaned and carpets vacuumed taking about 25 minutes. After the shift, the K9 Partner is walked quickly before going to sleep totally another 20 minutes. **This is approximately two hours and 55 minutes of off the clock work for each of the above-listed days for which Plaintiff Kenneth Kustra is not compensated.**

c. On Days Off: The K9 Partner is let out in the yard about every two hours. He gets a longer play session in the yard and a walk. Altogether time spent observing him the yard and walking him totals two hours. He is fed, his bowl cleaned, and given his medication twice which takes 40 minutes to an hour. The carpet is shampooed once per week (due to the K9 Partner having acid reflux he vomits on the carpet

frequently) and vacuumed which takes an hour and the vehicle is cleaned of dog debris once per week taking 30 minutes. Another 20 minutes is spent on grooming. **This is approximately four hours of off the clock work for which Plaintiff Kenneth Kustra is not compensated on each day, and an additional hour and 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight another animal or human member of the home due to their dominance traits and training.

94. Throughout the course of Plaintiff Kenneth Kustra's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

95. Plaintiff Joseph Mangold has one K9 Partner in the home as well as his previous K9 Partner who is now retired. Plaintiff Joseph Mangold works the overnight shift with a schedule that is alternating weeks of four days on, two days off then five days on two days off. A typical week of off the clock work for Plaintiff Joseph Mangold includes:

    a. Work Days: Plaintiff Joseph Mangold works overnight shifts. Before his scheduled shift his K9 Partner is walked and fed totaling approximately 30-40 minutes. He is let out an additional time prior to the shift, taking 15 minutes. After Plaintiff Joseph Mangold's shift, his K9 Partner has two walks and is let out in the yard which totals another hour. Feeding the K9 Partner takes approximately 20 minutes. Thirty minutes are spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes are spent on grooming. **This is approximately two hours and**

**fifty-five minutes of off the clock work for each of the above-listed days for which Plaintiff Joseph Mangold is not compensated.**

b.  Days Off- Approximately two hours and a half hours are spent walking, throwing the ball, or otherwise exercising the K9 Partner. An additional 40 minutes are spent feeding the K9 partner once in the morning and once in the evening. 30 minutes are spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes is spent on grooming. Another 30 minutes is spent cleaning the car of dog debris once per week. The K9 Partner causes damage to the yard trying to get out or relieving himself in the same spot which has required time and expense paid for by Plaintiff Joseph Mangold on the weekends. **This is approximately three hours and 55 minutes of off the clock work for which Plaintiff Joseph Mangold was not compensated on each day, and an additional 30 minutes on one of the days, plus the time and expense of the yard work.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight with the retired K9 Partner or another animal or human member of the home due to their dominance traits and training.

96. Throughout the entire course of Plaintiff Joseph Mangold's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

97. Plaintiff Edward Moyer worked as a K9 Officer for Defendant for many years prior to retiring. He was Injured on Duty and continued to perform all care responsibilities for his K9 Partner without payment while Injured on Duty. He ultimately adopted his most recent

K9 Partner upon retirement so they could retire together. He has had both two K9 Partners and one K9 Partner in the home at various times. A typical week of off the clock work for Plaintiff Edward Moyer would have included:

a. Monday-Friday: Before Plaintiff Edward Moyer's scheduled shift his K9 Partner was walked and fed totaling approximately 30-40 minutes. After Plaintiff Edward Moyer's shift, his K9 Partner has two walks and is let out in the yard which total another hour. Feeding the K9 Partner takes approximately 20 minutes. 30 minutes are spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes is spent on grooming. **This is approximately two hours and fifty-five minutes of off the clock work for each of the above-listed days for which Plaintiff Edward Moyer was not compensated.**

b. Saturday and Sunday- These were Plaintiff Edward Moyer's scheduled days off. Approximately two hours and a half hours were spent walking, throwing the ball, or otherwise exercising the K9 Partner. An additional 40 minutes were spent feeding the K9 partner once in the morning and once in the evening. 30 minutes were spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes was spent on grooming. Another 30 minutes was spent cleaning the car of dog debris once per week. **This is approximately three hours and 55 minutes of off the clock work for which Plaintiff Edward Moyer was not compensated on each day, and an additional 30 minutes on one of the days, plus the time and expense of the yard work.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet

visits or if the K9 Partner gets into a fight with another animal or human member of the home due to their dominance traits and training.

98. Throughout the entire course of Plaintiff Edward Moyer's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

99. Plaintiff John Snyder has one K9 Partner in the home. A typical week of off the clock work for Plaintiff John Snyder includes:

    a.  Work Days: Before Plaintiff John Snyder's scheduled shift his K9 Partner is walked and fed totaling approximately 30-40 minutes. After Plaintiff John Snyder's shift, his K9 Partner is let out in the yard several times during which he must be observed-this totals another hour. Feeding the K9 Partner takes approximately 20 minutes. Thirty minutes are spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes are spent on grooming. **This is approximately two hours and fifty-five minutes of off the clock work for each of the above-listed days for which Plaintiff John Snyder is not compensated.**

    b.  Days Off- Approximately two hours and 20 minutes are spent walking, playing with the K9 Partner in the park, or otherwise exercising the K9 Partner. An additional 40 minutes are spent feeding the K9 Partner once in the morning and once in the evening. 30 minutes are spent cleaning the home and yard of dog debris (hair, waste, ect.). Another 15 minutes is spent on grooming. Another 45 minutes is spent removing the crate from the car cleaning the car and crate of dog debris once per week. **This is approximately three hours and 45 minutes of off the**

**clock work for which Plaintiff John Snyder is not compensated on each day, and an additional 30 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight with the retired K9 Partner or another animal or human member of the home due to their dominance traits and training.

100.     Throughout the entire course of Plaintiff John Snyder's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

101.     Plaintiff Sean Elkins has one K9 Partner in the home. He worked alternating shifts through this year when he began overnights. A typical week of off the clock work for Plaintiff Sean Elkins includes:

a.   Work Days: On day shifts, before Plaintiff Sean Elkins' scheduled shift his K9 Partner is walked for 30 minutes. After Plaintiff Sean Elkins' shift, his K9 Partner is fed totaling 30 minutes. She is then let out in the yard on a lead (she can jump the fence) for 30 minutes. The yard is cleaned taking 15 minutes. The K9 Partner gets two more quicker breaks in the yard throughout the night totaling an additional 30 minutes. She is also groomed taking 15 minutes. For night shifts, the K9 Partner is kept on her schedule but the evening tasks are completed before the shift and the K9 Partner's morning walk occurs after the shift. **This is approximately two hours and thirty minutes of off the clock work for each of the above-listed days for which Plaintiff Sean Elkins is not compensated.**

b. Days Off- The K9 Partner gets a morning walk for 30 minutes and then is driven to the park to play in the tennis courts due to dog aggression issues (this ensures the K9 Partner is not exposed to unleashed dogs). The play session is an additional 40 minutes. The K9 Partner gets three additional sessions of yard time approximating 45 minutes. The K9 Partner is fed totaling 30 minutes.  The yard is cleaned taking 15 minutes. 30 minutes are spent cleaning the home of dog debris (hair, waste, ect.). More in depth grooming is performed taking 20 minutes. Another 45 minutes is spent removing the crate from the car cleaning the car and crate of dog debris once per week.  **This is approximately three hours and 30 minutes of off the clock work for which Plaintiff Sean Elkins is not compensated on each day, and an additional 45 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight with the retired K9 Partner or another animal or human member of the home due to their dominance traits and training.

102.    Throughout the entire course of Plaintiff Sean Elkins' employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

103.    Plaintiff Paul Sulock has one K9 Partner in the home. He works a mid-shift of 4:00pm to 12:00am. A typical week of off the clock work for Plaintiff Paul Sulock includes:

a. Work Days: Before Plaintiff Paul Sulock's scheduled shift his K9 Partner is let out in the yard and the yard is cleaned up taking 40 minutes. The K9 Partner is fed, taking another 30 minutes. The K9 Partner is let out in the yard again and the yard

is cleaned again taking another 40 minutes.  After Plaintiff Paul Sulock's shift, the K9 Partner is let out quickly before going to bed, taking 20 minutes. **This is approximately two hours and ten minutes of off the clock work for each of the above-listed days for which Plaintiff Paul Sulock is not compensated.**

b. Days Off- The K9 Partner is let out and the yard is cleaned taking 40 minutes. The K9 Partner gets a long walk totaling 45 minutes. The K9 Partner is fed taking another 30 minutes. The K9 Partner gets three additional sessions of yard time which each require cleaning approximating an hour. Thirty minutes are spent cleaning the home of dog debris (hair, waste, ect.). Grooming is performed taking 20 minutes. Another 45 minutes is spent removing the crate from the car cleaning the car and crate of dog debris once per week. **This is approximately three hours and 45 minutes of off the clock work for which Plaintiff Paul Sulock is not compensated on each day, and an additional 45 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight with another animal or human member of the home due to their dominance traits and training.

104.     Throughout the entire course of Plaintiff Paul Sulock's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

105.     Plaintiff Curtis Hill has one K9 Partner in his home. He works alternating shifts. A typical week of off the clock work for Plaintiff Curtis Hill includes:

a.  Work Days: Before morning shifts Plaintiff Curtis Hill walks his K9 Partner totaling 30 minutes. After his shift the K9 Partner is fed taking 30 minutes, and walked taking another 30 minutes. The home is vacuumed taking 30 minutes and the K9 partner gets on additional quick walk totaling 20 minutes. For late shifts the same work is performed, but reversed, to keep the K9 Partner's schedule as consistent as possible **This is approximately two hours and twenty minutes of off the clock work for each of the above-listed days for which Plaintiff Curtis Hill is not compensated.**

b.  Days Off- The K9 Partner is walked three times taking an hour and 30 minutes. The K9 Partner is fed taking another 30 minutes. 30 minutes are spent cleaning the home of dog debris (hair, waste, ect.). Grooming is performed taking 20 minutes. Another 45 minutes is spent removing the crate from the car cleaning the car and crate of dog debris once per week. **This is approximately three hours and 35 minutes of off the clock work for which Plaintiff Curtis Hill is not compensated on each day, and an additional 45 minutes on one of the days.**

This does not include other off the clock activities such as vetting, procuring food, dealing with health or medical conditions of the K9 Partner in the home outside of vet visits or if the K9 Partner gets into a fight with the retired K9 Partner or another animal or human member of the home due to their dominance traits and training. Plaintiff Curtis Hill's partner was injured on the job and could not be left alone due to his medical treatment, incurring additional care time during the K9 Partner's recovery.

106.     Throughout the entire course of Plaintiff Curtis Hill's employment with Defendant, K9 officers have never received overtime compensation for the at home care of K9 Partners.

107.     In the past ten years Plaintiffs have complained to the union and to administration on several occasions that they should be receiving overtime pay for the at home care of K9 Partners. They were ignored.

108.     In 2018, Plaintiffs filed a union grievance notifying Defendant that they were entitled to overtime pay. They were told at that time that backpay was "not on the table" but they would try to negotiate for overtime moving forward.

109.     At no point in time since 2018 was overtime for that at home care of the K9 Partners ever paid out.

110.     Both through internal complaints and through the grievance, Defendant was on notice that Plaintiffs and Class Plaintiffs were entitled to overtime compensation which they were not receiving, and nothing was done to rectify the situation for years afterwards. As such, Defendant's behavior in denying overtime compensation has been and continues to be a willful violation of the FLSA, PMWA, WPCL and Pennsylvania Common Law.

111.     Additionally, when filing the grievance, Class Plaintiff's noted that K9 officers employed by Defendant in the Sherriff's Office receive overtime pay for caring for their dogs at home, as do the K9 officers stationed at the Philadelphia Airport.

112.     Defendant had knowledge that Plaintiffs and Class Plaintiffs were entitled to overtime pay for the at home care of their K9 Partners- at the same time they were denying Class Plaintiffs fair and just compensation they were paying that same compensation to K9 officers in other departments for the exact same work.

113.     As of the date of the filing of this Complaint, Defendant has failed to pay any Class Plaintiff overtime wages for the at home care of their K9 Partners in direct and willful violation of the FLSA, PMWA, WPCL and Pennsylvania Common Law.

114.     Officer O'Reilly and Class Plaintiffs were and are, within the meaning of the FLSA and PMWA, non-exempt employees of Defendant and therefore entitled to the statutorily mandated overtime compensation the at home care of their K9 Partners.

115.     As a result of Defendant's failure to properly pay overtime to the K9 officers for the at home care of K9 Partners in accordance with the overtime provisions of the FLSA and PMWA, Defendants unjustly benefitted from reduced labor and payroll costs.

116.     As a result of Defendants' improper and willful failure to pay overtime in accordance with the requirements of the FLSA and PMWA, Officer O'Reilly and Class Plaintiffs have suffered damages.

117.     Defendant failed to pay Class Plaintiffs at a rate of at least 1.5 times their regular rate of pay for each hour worked caring for their K9 Partners at home.

118.     Defendant has threatened to fire any employee who questioned their pay practices, or to have them removed from the union where they are not eligible for the same pay structure.

119.     As a result, Class Plaintiffs have suffered damages.

## COUNT I
## FAILURE TO PAY OVERTIME TO COLLECTIVE CLASS PLAINTIFFS
## FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*

120.     Plaintiffs repeat every allegation made in the above paragraphs of this complaint.

121.     Pursuant to Section 206(b) of the FLSA, all employees must be compensated for every hour worked in a workweek.

122.    Moreover, Section 207(a)(1) of the FLSA states that employees must be paid overtime, equal to 1.5 times the employees' regular rate of pay, for all hours worked in excess of 40 hours per week.

123.    According to the policies and practices of Defendants, Plaintiffs and Collective Class Plaintiffs bring their K9 Partners home with them and live with their K9 Partners. In so doing, Plaintiffs and Collective Class Plaintiffs spend a significant amount of time walking, exercising, training, grooming, cleaning, arranging veterinary care and treatment and otherwise caring for their K9 Partners.

124.    The time spent engaging in these activities occurs every day, before and after shifts, on days off and on holidays. K9 officers must care for their K9 Partners every single day.

125.    Despite Defendant being aware that Plaintiffs and Collective Class Plaintiffs are entitled to overtime compensation for the care of their K9 Partners, Defendant has failed to compensate them at all for the at home care of the K9 Partners.

126.    The forgoing actions, policies and practices of Defendants violate the FLSA.

127.    Defendants actions were willful, in bad faith, and in reckless disregard of clearly applicable FLSA provisions.

128.    Defendants are liable to Plaintiffs and Collective Class Plaintiffs for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiffs pray for the following relief on behalf of themselves and Collective Class Plaintiffs:

a.  An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

38

b.  An Order from this Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all employees who have worked for Defendants during the preceding three (3) years PPD K9 Unit officers, and authorizing Plaintiffs' counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt in to this lawsuit if they worked for Defendant during the liability period, but were not paid overtime compensation as required by the FLSA;

c.  Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA;

d.  Adjudicating and declaring that Defendants violated the FLSA by failing to pay overtime compensation to Plaintiffs and Collective Class Plaintiffs for work performed caring K9 Partners at home outside of scheduled shifts and normal working hours;

e.  Awarding Plaintiffs and Collective Class Plaintiffs liquidated damages in accordance with the FLSA;

f.  Awarding Plaintiffs reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA;

g.  Awarding pre- and post-judgment interest and court costs as further allowed by law;

h.  Granting Plaintiffs and Collective Class Plaintiffs leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

i.  For all additional general and equitable relief to which Plaintiffs and Collective Class Plaintiffs are entitled.

<u>**COUNT II**</u>
**FAILURE TO PAY OVERTIME TO THE PENNSYLVANIA CLASS**
<u>**PENNSYLVANIA MINIMUM WAGE ACT, 42 P.S. §§ 333.101,** *et seq.*</u>

129.   Plaintiffs repeat every allegation made in the above paragraphs of this complaint.

130.   At all relevant times, Defendant has employed, and/or continues to employ, Plaintiffs and Pennsylvania Class Plaintiffs within the meaning of the PMWA.

131.   Defendants have a willful policy and practice of refusing to pay overtime compensation at a rate of 1.5 times the regular rate for all hours worked caring for K9 Partners at home outside of normal, scheduled work hours.

132.     Defendants had a willful policy and practice of not paying K9 officers for all hours worked.

133.     Defendants have a willful policy and practice of requiring K9 officers to work off-the-clock caring for their K9 Partners without just compensation.

134.     Accordingly, Defendant has violated and continues to violate the PMWA.

135.     Due to Defendants' violations, Plaintiffs and the Pennsylvania Class Plaintiffs are entitled to recover from Defendant the amount of unpaid overtime compensation, attorneys' fees and costs.

**WHEREFORE**, Plaintiffs pray for the following relief on behalf of themselves and the Pennsylvania Class Plaintiffs:

a.   An Order from this Court certifying this case as a class action and designating Plaintiffs as the representatives of the Pennsylvania Class Plaintiffs and their counsel as class counsel;

b.   An award to Plaintiffs and the Pennsylvania Class Plaintiffs for the amount of unpaid overtime compensation to which they are entitled, including interest thereon, and penalties subject to proof;

c.   An award to Plaintiffs and the Pennsylvania Class Plaintiffs for reasonable attorneys' fees and all costs; and

d.   An award to Plaintiffs and the Pennsylvania Class Plaintiffs for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

**COUNT III**
**FAILURE TO PAY WAGES TO THE PENNSYLVANIA CLASS**
**PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. § 260.1, _et seq_**

136.     Plaintiffs repeat every allegation made in the above paragraphs of this complaint.

137.     At all relevant times, Defendant has employed and/or continues to employ Plaintffs and the Pennsylvania Class Plaintiffs within the meaning of the WPCL.

138.     Pursuant to the WPCL, Plaintiffs and the Pennsylvania Class Plaintiffs were entitled to receive all compensation due and owing to them on their regular payday.

139.     Defendant has willfully refused to compensate Plaintiffs and Pennsylvania Class Plaintiffs for time spent caring for their K9 Partners at home.

140.     As a result of Defendants' unlawful policies, Plaintiffs and the Pennsylvania Class Plaintiffs have been deprived of compensation due and owing.

141.     Plaintiffs, on behalf of himself and the Pennsylvania Class Plaintiffs, is entitled to recover from Defendants the amount of unpaid compensation and an additional amount of 25% of the unpaid compensation as liquidated damages.

**WHEREFORE**, Plaintiffs pray for the following relief on behalf of themselves and the Pennsylvania Class Plaintiffs:

a.  An Order from this Court certifying this case as a class action and designating Plaintiffs as the representatives of the Pennsylvania Class Plaintiffs and their counsel as class counsel;

b.  An award to Plaintiffs and the Pennsylvania Class Plaintiffs for the amount of unpaid compensation to which they are entitled and liquidated damages, including interest thereon, and penalties subject to proof;

c.  An award to Plaintiffs and the Pennsylvania Class Plaintiffs for reasonable attorneys' fees and all costs; and

d.  An award to Plaintiffs and the Pennsylvania Class Plaintiffs for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

## COUNT IV
## UNJUST ENRICHMENT AT THE EXPENSE OF THE PENNSYLVANIA CLASS
## PENNSYLVANIA COMMON LAW—UNJUST ENRICHMENT

142.     Plaintiffs repeat every allegation made in the above paragraphs of this complaint.

143.     Plaintiffs and the Pennsylvania Class Plaintiffs were employed by Defendant within the meaning of Pennsylvania common law.

41

144.     At all relevant times, Defendants had a willful policy and practice of denying Plaintiffs and the Pennsylvania Class Plaintiffs their full wages for work performed caring for K9 Partners off the clock.

145.     At all relevant times, Defendants had a willful policy and practice of requiring Plaintiffs and the Pennsylvania Class Plaintiffs to work off-the-clock.

146.     Defendants retained the benefits of employing Plaintiffs and the Pennsylvania Class Plaintiffs without renumeration, and received the full benefit of off the clock care for their K9 Partners.

147.     Defendants were unjustly enriched not compensating Plaintiffs and the Pennsylvania Class Plaintiffs for work performed off the clock.

148.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Pennsylvania Class Plaintiffs have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant for the benefits conferred by Plaintiffs and the Pennsylvania Class Plaintiffs.

**WHEREFORE**, Plaintiffs pray for the following relief on behalf of themselves and the Pennsylvania Class Plaintiffs:

a.   An Order from this Court certifying this case as a class action and designating Plaintiffs as the representative of the Pennsylvania Class Plaintiffs and their counsel as class counsel;

b.   An award to Plaintiffs and the Pennsylvania Class Plaintiffs for the amount of unpaid compensation to which they are entitled and liquidated damages, including interest thereon, and penalties subject to proof;

c.   An award to Plaintiffs and the Pennsylvania Class Plaintiffs for reasonable attorneys' fees and all costs; and

d.   An award to Plaintiffs and the Pennsylvania Class Plaintiffs for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand

a trial by jury on all questions of fact raised by this complaint.


Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

/s/Erica A. Shikunov
ERICA A. SHIKUNOV, ESQUIRE
1835 Market Street, Suite 2950
Philadelphia, PA 19103
215-391-4790
erica@dereksmithlaw.com
*Attorneys for Plaintiffs and*
*the Proposed Classes*