## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH O'REILLY, RICHARD TRESTON, JANIE DIPASQUALE, NICK DIPASQUALE, MICHAEL CAHILL, HORACE LOPEZ, JUSTIN O'BRIEN, BRIAN QUIRPLE, WILLIAM SUAREZ, JAMES ZIMMERMAN, DENNIS BAKER, RODNEY POLIARD, KENNETH KUSTRA, JOSEPH MANGOLD, EDWARD MOYER, JOHN SNYDER, SEAN ELKINS, and CURTIS HILL,** *individually and on behalf of others similarly situated*, | : : : : : : : : : : : : : : : : : : : : **CIVIL ACTION NO. 2:21-cv-00313** |
| **Plaintiffs,** | |
| **v.** | |
| **CITY OF PHILADELPHIA,** | |
| **Defendant.** | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, by and through their undersigned counsel, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, hereby move this Honorable Court for an order entering summary judgment in favor of Plaintiffs. In support of this Motion, Plaintiffs rely upon the accompanying Memorandum of Law and attached Exhibits.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Erica A. Shikunov, Esquire*
ERICA A. SHIKUNOV, ESQUIRE
*Attorney for Plaintiffs and the Proposed Classes*

Dated: June 20, 2022

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH O'REILLY, RICHARD TRESTON, JANIE DIPASQUALE, NICK DIPASQUALE, MICHAEL CAHILL, HORACE LOPEZ, JUSTIN O'BRIEN, BRIAN QUIRPLE, WILLIAM SUAREZ, JAMES ZIMMERMAN, DENNIS BAKER, RODNEY POLIARD, KENNETH KUSTRA, JOSEPH MANGOLD, EDWARD MOYER, JOHN SNYDER, SEAN ELKINS, and CURTIS HILL,** *individually and on behalf of others similarly situated*, | : : : : : : : : : : : : : : : | **CIVIL ACTION NO. 2:21-cv-00313**  **PROPOSED ORDER** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **CITY OF PHILADELPHIA,** | : : : | |
| **Defendant.** | : | |

AND NOW, this _____ day of _____, 2022, upon consideration of Plaintiffs' Motion for Summary Judgment, and any response, thereto, it is hereby ORDERED that the MOTION is GRANTED and judgment is entered in favor Plaintiffs as to liability, three year liability period, and liquidated damages.

_____
Gene E.K. Pratter
United States District Judge

**TABLE OF CONTENTS**

I.     PROCEDURAL HISTORY ..........................................................................1

II.    STATEMENT OF QUESTIONS INVOLVED............................................2

III.   ARGUMENT..............................................................................................2

       A.  Standard of Review..................................................................................2

       B.  Summary Judgment Must be Entered because it is Undisputed that Plaintiffs
           Engage in Conduct that Constitutes "Hours Worked" within the Meaning of the
           FLSA..................................................................................................3

           1.  Plaintiffs Engage in Conduct that is an Integral and Indispensable Part of their
               Principal Activities ............................................................................4

           2.  Despite Performing Activities that are Integral and Indispensable Parts of their
               Principal Activities, Plaintiffs Have Not Been Compensated .........................9

       C.  Plaintiffs are Entitled to a Three-Year Liability Period because Defendant City's
           Violation of the FLSA is Willful ............................................................9

       D.  Plaintiffs are Entitled to Liquidated Damages under the FLSA because Defendant
           City is not Entitled to a Liquidated Damages Defense ...........................................11

IV.    CONCLUSION..........................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ...................................................................................................2

*Andrews v. DuBois*
  8888 F. Supp. 213 (D. Mass. 1995) ...........................................................................8

*Asencio v. Tyson Foods, Inc.*
  342 F. 3d 301 (3d Cir. 2003) ......................................................................................3

*Chao v. Hotel Oasis, Inc.*
  493 F. 3d 26 (1st Cir. 2007) ......................................................................................11

*Flores v. City of San Gabriel*
  824 F. 3d 890 (9th Cir. 2016) ...................................................................................10

*Holzapel v. Town of Newburgh, NY*
  145 F. 3d 516 (2d Cir. 1988) ......................................................................................8

*Integrity Staffing Sols., Inc. v. Busk*
  574 U.S. 27, 135 S. Ct. 513, 190 L. Ed. 2d 410 (2014) .............................................3

*Levering v. D.C.*
  869 F. Supp. 24 ..........................................................................................................7

*Lugo v. Farmer's Pride Inc.*
  802 F. Supp. 2d 598 (E.D. Pa. 2011) ......................................................................11

*Martin v. Cooper Elec. Supply Co.*
  940 F.2d 896 (3d Cir. 1991) .....................................................................................11

*McLaughlin v. Richland Shoe Co.*
  486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) ...........................................10

*Reich v. New York City Transit Auth.*
  45 F. 3d 646 (2d Cir. 1995) .......................................................................................7

*Rosano v. Township of Teaneck*
   754 F.3d 177 (3d Cir. 2014) ........................................................................9

*Souryavong v. Lackawanna Cty*
   872 F. 3d 122 (3d Cir. 2017)........................................................................10

*Steiner v. Mitchell*
   350 U.S. 247, 76 S. Ct. 330, 100 L.Ed. 267 (1956) ...................................4

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*
   321 U.S. 590, 64 S. Ct. 698 L.Ed. 949 (1944) ...........................................3

*Truslow v. Spotsylvania County Sheriff*
   783 F. Supp. 274 (E.D. Va. 1992) ..............................................................8

*Tyger v. Precision Drilling Corp.*
   832 F. App'x 108 (3d Cir. 2020).................................................................4

*Udvari v. United States*
   28 Fed. Cl. 137 (1993) ...............................................................................8

*Williams v. Tri-Cly. Growers, Inc.*
   747 F.2d 121 (3d Cir. 1984) ......................................................................11

**Other Authorities**

Fed. R. Civ. P. 56..........................................................................................2, 3

29 U.S.C. § 206...............................................................................................3

29 U.S.C. § 207...............................................................................................3

29 U.S.C. § 216.............................................................................................11

29 U.S.C. § 254...............................................................................................3

29 U.S.C. § 255.............................................................................................10

29 U.S.C. § 260.........................................................................................1, 11

**ERICA A. SHIKUNOV, ESQUIRE**
**Attorney ID No. 316841**
**1835 Market Street, Suite 2950**
**Philadelphia, PA 19103**
**(215) 391-4790**
**erica@dereksmithlaw.com**
*Attorneys for Plaintiffs and the Proposed Classes*

| | |
|---|---|
| **JOSEPH O'REILLY, RICHARD TRESTON, JANIE DIPASQUALE, NICK DIPASQUALE, MICHAEL CAHILL, HORACE LOPEZ, JUSTIN O'BRIEN, BRIAN QUIRPLE, WILLIAM SUAREZ, JAMES ZIMMERMAN, DENNIS BAKER, RODNEY POLIARD, KENNETH KUSTRA, JOSEPH MANGOLD, EDWARD MOYER, JOHN SNYDER, SEAN ELKINS, and CURTIS HILL,** *individually and on behalf of others similarly situated*, | : : : : : : : : : : : : |
| **Plaintiffs,** | : : : |
| **v.** | : : : |
| **CITY OF PHILADELPHIA,** | : : : |
| **Defendant.** | : : : |

**CIVIL ACTION NO. 2:21-cv-00313**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.   PROCEDURAL HISTORY

Named Plaintiffs ("Plaintiffs"), individually and on behalf of others similarly situated, filed class and collective action lawsuit against Defendant, the City of Philadelphia ("Defendant"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 42 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq.* and Pennsylvania common law on January 22, 2021.

## II.    STATEMENT OF QUESTIONS INVOLVED

1. Should Plaintiffs' Motion for Summary Judgment be Granted where Plaintiffs Demonstrated that They Engage in Conduct that Constitutes "Hours Worked" Within the Meaning of the FLSA?

   **Suggested answer: Yes**

2. Should Plaintiffs' Motion for Summary Judgment be Granted where Plaintiffs Demonstrated that they are Entitled to a Three-Year Liability Period because Defendant City's Violation of the FLSA is Willful?

   **Suggested answer: Yes**

3. Should Plaintiffs' Motion for Summary Judgment be Granted where Plaintiffs Demonstrated that Defendant City is not Entitled to a Liquidated Damages Defense?

   **Suggested answer: Yes**

## III.    ARGUMENT

### A. <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Rule 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials; or (B) showing that the materials cited do not establish the absence or presence of

a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c).

**B.   Summary Judgment Must be Entered because it is Undisputed that Plaintiffs Engage in Conduct that Constitutes "Hours Worked" within the Meaning of the FLSA**

The FLSA requires employers "to pay their employees at least a specified minimum

hourly wage for work performed ... and to pay one and one-half times the employee's regular rate

of pay for hours worked in excess of forty hours per week." De Asencio v. Tyson Foods, Inc.,

342 F.3d 301, 306 (3d Cir. 2003) (citing 29 U.S.C. §§206, 207). The FLSA did not define

"work" or "workweek." However, "work" has been defined as "physical or mental exertion

(whether burdensome or not) controlled or required by the employer and pursued necessarily and

primarily for the benefit of the employer and his business." Integrity Staffing Sols., Inc. v. Busk,

574 U.S. 27, 31, 135 S. Ct. 513, 516, 190 L. Ed. 2d 410 (2014) (*quoting* Tennessee Coal, Iron &

R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).

Congress then amended the FLSA with the Portal-to-Portal Act, which reads in relevant

part:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended ... on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for ... activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a)(2).

3

However, the Supreme Court has held that the above Act does not exempt activities that are "an integral part of and are essential to the principal activities of the employees." <u>Steiner v. Mitchell</u>, 350 U.S. 247, 254, 76 S.Ct. 330, 100 L.Ed. 267 (1956).

1. <u>Plaintiffs Engage in Conduct which is an Integral and Indispensable Part of their Principal Activities</u>

In order to demonstrate that an activity is integral and indispensable to a principal activity, a plaintiff must establish that "it is an intrinsic element of those [principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." <u>Tyger v. Precision Drilling Corp.</u>, 832 F. App'x 108, 114 (3d Cir. 2020) (*citing* <u>Busk</u>, 574 U.S. at 32–33, 135 S.Ct. 513).

In <u>Steiner</u>, the Court stated that integral and indispensable activities are those that (1) "are made necessary by the nature of the work performed;" (2) "fulfill mutual obligations between [employers] and their employees;" (3) "directly benefit [the employers] in the operation of their business;" and (4) "are so closely related to other duties performed by the employees as to be an integral part thereof." <u>Steiner</u> at 252-253, 76 S.Ct. at 333-34.

In the present case, upon their hiring, Plaintiffs were assigned to the K9 Unit, where they are expected to live with their K9 Partners and provide care for them during and outside of work hours. (Exhibit A, Complaint at ¶¶64-65). Plaintiffs have specific responsibilities to their K9 Partner(s) such as maintaining the health and welfare of their K9 Partner(s) on and off duty, ensuring their K9 Partner(s) receives medical attention for any illness or injury, administering medications prescribed by a veterinarian, taking their K9 Partner(s) to the veterinarian for annual medical examination, and cleaning their vehicles for their K9 Partner(s). (Exhibit B, Standard Operating Procedure at 5-6).

The Standard Operating Procedures detail the off-duty requirements of a K9 Officer regarding the maintenance and care of their K9 Partner(s). For example, each K9 Officer must feed his/her K9 Partner the prescribed amount of food recommended by a veterinarian. (Exhibit B, Standard Operating Procedure at 15). Moreover, when it comes to grooming their K9 Partner(s), each K9 Officer is expected to brush or comb their K9 Partner regularly to prevent a buildup of the undercoat, trim their K9 Partners' nails, bathe their K9 Partner(s), apply flea and tick preventative, and clean up after their K9 Partners' droppings. (Exhibit B, Standard Operating Procedure at 15). Further, each K9 Partner must be housed at the K9 Officer's residence, where the K9 Officer must engage in daily exercise with his/her K9 Partner(s). (Exhibit B, Standard Operating Procedures at 15).

Here, there is no doubt that Plaintiffs' off-duty work is an integral and indispensable part of their principal activities. It is undisputed that Plaintiffs are responsible for the care of their K9 Partners both on and off duty, including weekends. (Exhibit B, Standard Operating Procedures at 14-15; Exhibit C, LaSalle Dep. at 11, 23-24; 12, 1-2, 15-23; 24, 1-6). Each Plaintiff spends off-duty time feeding, grooming, training, exercising, coordinating veterinary care, administering medication, ensuring that their K9 Partner(s) interact safely with all other residents of the home, human or animal, securing the home and ensuring it remains secure so the K9 Partner cannot get out, and cleaning up after their K9 Partner. (Exhibit D, Plaintiff O'Reilly Dep at 19, 3-5; 23, 8-19; 42, 16-19; 44, 14-24; 45, 8-24; 46, 1-10; 51, 18-22; 53, 2-7; 54, 2-8; 61, 8-11; 62, 6-12; 66, 12-24; 67, 1-5; 68, 3-16; Exhibit E, Plaintiff Cahill Dep at 56, 15-24; 57, 1-13; 59, 3-10; 59, 21-24; Exhibit F, Plaintiff Lopez Dep at 17, 16-24; 19, 22; 20, 3-10; 21, 10-13, 20-21; 26, 2-6; 28, 5-7; 29, 12-19; 30, 12-14; 31, 7-9; 48, 5-18; 49, 12-17; Exhibit G, Plaintiff Kustra Dep at 11, 1-5; 12, 4-17; 14, 11-17; 21, 7-9; 23, 15; 24, 13-21; 28, 6-12; 30, 7-11; 34, 16-24; 35, 12; 42, 8-10; Exhibit H,

Plaintiff Sulock Dep at 10, 4-17; 16, 8-9, 21; 17, 12; 19, 12-18; 20, 19-24; 24, 1-8, 12-14; 26, 4-5, 13-15; Exhibit I, Plaintiff Treston Dep at 22, 9-24; 25, 13-16; 26, 9-13; 31, 16-20; 32, 13-15; 33, 21-22; 34, 20-21; 35, 3-7; 36, 15-22; 37, 9-13, 16-19, 22-24; 38, 1-3, 16-18; 40, 8-9; 43, 6-9; 44, 3-5; 46, 15-20; 48, 20-23).

For example, Plaintiffs must feed their K9 Partners.  Plaintiff Kustra testified that he feeds his K9 Partner and adds an anti-acid pill into his K9 Partner's food each morning before he goes to work. (Exhibit G, Plaintiff Kustra Dep at 12, 7-17). While Plaintiff Kustra's K9 Partner is eating, Plaintiff Kustra must observe his K9 Partner or else his K9 Partner will not eat. (Exhibit G, Plaintiff Kustra Dep at 13, 7-12).  Similarly, Plaintiff Treston testified that he also must watch his K9 Partners while they eat so they don't steal one another's food. (Exhibit I, Plaintiff Treston Dep at 36, 19-24).  Plaintiff Cahill feeds his K9 Partners in the morning before work. (Exhibit E, Plaintiff Cahill Dep at 33, 13-18).  Plaintiff Cahill also spends time weighing his K9 Partners' food. (Exhibit E, Plaintiff Cahill Dep at 35, 13-14).  When Plaintiff Lopez gets home after a day of work, he feeds his K9 Partner. (Exhibit F, Plaintiff Lopez Dep at 26, 2-6). After his shift, Plaintiff Sulock feeds his K9 Partner. (Exhibit H, Plaintiff Sulock Dep at 16, 8-9).

In order for his K9 Partner to get exercise, in the evenings after his shift, Plaintiff Kustra will take his K9 Partner for a walk at the Krewstown police stables. (Exhibit G, Plaintiff Kustra Dep at 24, 13-21). Prior to beginning his morning shift, Plaintiff Cahill walks both of his K9 Partners. (Exhibit E, Plaintiff Cahill Dep at 37, 3-5).  In addition to feeding his K9 Partners, Plaintiff Lopez also takes his K9 Partners for a walk. (Exhibit F, Plaintiff Lopez Dep at 28, 5-7). After completing his day-shift, Plaintiff O'Reilly will walk or play ball with his K9 Partner. (Exhibit D, Plaintiff O'Reilly Dep at 61, 8-10). Once Plaintiff Sulock has fed his K9 Partner, he will take him for a walk. (Exhibit H, Plaintiff Sulock Dep at 16, 21). Additionally, before Plaintiff

Sulock goes to bed, he will take his K9 Partner to the park and play with him. (Exhibit H, Plaintiff Sulock Dep at 19, 8-18).

On one occasion, Plaintiff Treston had to take one of his K9 Partners to Penn Vet due to sickness. Plaintiff Treston spent a total of six hours waiting at the vet and commuting to and from the vet. (Exhibit I, Plaintiff Treston Dep at 43, 24; 44, 1-2). Plaintiff Treston was not compensated for this time. (Exhibit I, Plaintiff Treston Dep at 44, 3-5). Plaintiff Cahill tries to schedule his K9 Partners' vet appointments when he is on-duty, but sometimes he has to take his K9 Partners to the vet when he is off-duty. (Exhibit E, Plaintiff Cahill Dep at 59, 21-24). Plaintiff Lopez testified that there have been times when he has taken his K9 Partner to the vet when he was off duty and, as a result, was not compensated. (Exhibit F, Plaintiff Lopez Dep at 49, 12-17).

As Plaintiffs are in charge of grooming their K9 Partner, Plaintiff Treston testified that he takes his K9 Partner to a groomer every four months. (Exhibit I, Plaintiff Treston Dep at 48, 124, 20-23). Plaintiff Lopez tries to groom his K9 Partner while on-duty, but there are times he bathes his K9 Partner before his shift starts. (Exhibit F, Plaintiff Lopez Dep at 42, 5-10). Plaintiff O'Reilly brushes his K9 Partner a few times a week due to shedding. (Exhibit D, Plaintiff O'Reilly Dep at 57, 19-23). Plaintiff Sulock occasionally brushes his K9 Partners on his days off. (Exhibit H, Plaintiff Sulock Dep at 24, 12-14).

Certainly, these activities constitute integral and indispensable parts of Plaintiffs' principal activities as police officers assigned to the K9 Unit. *See* Levering v. D.C., 869 F. Supp. 24, 26 (finding that "[p]laintiffs are entitled to compensation under the FLSA for the actual time spent exercising, feeding, and otherwise caring for the canine detachment dogs"); Reich v. New York City Transit Auth., 45 F.3d 646, 650–51 (2d Cir.1995) (walking, feeding, grooming, training, and cleaning up after police dogs are integral and indispensable parts of handler's principal activities

and are compensable under the FLSA); <u>Udvari v. United States</u>, 28 Fed.Cl. 137, 139–40 (1993) (time spent caring for police canines may be compensable work but claim barred by statute of limitations); <u>Truslow v. Spotsylvania County Sheriff</u>, 783 F.Supp. 274, 279 (E.D.Va.1992) (granting plaintiff's motion for summary judgment on issue of liability because attendance at canine training sessions, unscheduled emergency canine calls, and required attendance at canine demonstrations are "plainly" integral and indispensable parts of officer's principal activities as deputy sheriff ), *aff'd*, 993 F.2d 1539 (4th Cir. 1993); <u>Andrews v. DuBois</u>, 888 F. Supp. 213 (D. Mass. 1995) (time spent by correctional officers feeding, grooming, and walking police dogs at home were indispensable parts of maintaining dogs as law enforcement tools); <u>Holzapel v. Town of Newburgh, N.Y.</u>, 145 F.3d 516, 522 (2d Cir.1988) ("[A] K-9 officer must be compensated for the off-duty time that he spends performing the tasks involved in caring for and training his assigned police dog").

Moreover, as outlined in the Standard Operating Procedures, Orders, Directives, and USPCA Manual 2020 ("SOP"), Plaintiffs are to house their K9 Partner(s) at their residence. (Exhibit B, Standard Operating Procedures at 14-15; Exhibit C, LaSalle Dep at 28, 10-13; Exhibit I, Plaintiff Treston Dep at 9, 22-24). By housing their K9 Partners at their homes, Plaintiffs spend additional off-the-clock time not only maintaining their K9 Partner(s), but also cleaning their homes, cars, yards, and K9 crates of dog debris. Plaintiffs would not have to spend off-duty time performing such tasks if they did not have a K9 Partner. (Exhibit A, Complaint). *See* <u>Andrews</u>, *supra* (finding that time spent feeding, grooming, and walking the dogs is time spent working because this is time the officers do not have to themselves).

Lastly, if there was any doubt that Plaintiffs' conduct was integral and indispensable to their principal activities, Anthony LaSalle, who oversees the K9 Unit, **admitted** that the upkeep

8

and maintenance of the K9 Partner(s) is related to Plaintiffs' work responsibilities and duties. (Exhibit C, LaSalle Dep at 24, 13-16).

These facts and supporting evidence show that Plaintiffs engage in activities that are integral and indispensable parts of their principal activities which warrant compensation.

2. Despite Performing Activities that are Integral and Indispensable Parts of Their Principal Activities, Plaintiffs Have Not Been Compensated

When an employee brings a claim under the FLSA, he ordinarily bears the burden of proving that he performed work for which he was not properly compensated. Rosano v. Township of Teaneck, 754 F.3d 177, 188 (3d Cir. 2014).

In the case at bar, it is irrefutable that Plaintiffs have not been compensated for their off-duty work. John McGrody, Vice President of the Fraternal Order of Police, Christine Coulter, Commissioner of the Police Department, and Anthony LaSalle each testified that the Plaintiffs have not been compensated for the off-duty care and maintenance of their K9 Partners, despite acknowledging that such off-duty maintenance of their K9 Partners is related to Plaintiffs' work responsibilities and duties. (Exhibit J, McGrody Dep. at 18, 17-20; Exhibit K, Coulter Dep. at 15, 9-17; 60 at 15-21; Exhibit C, LaSalle Dep. at 20, 15-20; 24, 13-16). Defendant City has no evidence to demonstrate that Plaintiffs are compensated for the off-duty time they dedicate to their K9 Partners.

For these reasons, Defendant cannot demonstrate that Plaintiffs were compensated for their off-duty care and maintenance of their K9 Partners.

C. **Plaintiffs are Entitled to a Three-Year Liability Period because Defendant City's Violation of the FLSA is Willful**

Under the FLSA, whether an employer "willfully" violates the statute is critical because such a finding extends the FLSA's limitations period from two years to three, bringing another

year of lost pay within the scope of the worker's claim. 29 U.S.C. § 255(a). The Supreme Court defines "willfulness" to include situations when the employer, at the time of its FLSA violation, either "knew" its conduct was prohibited by the FLSA or "showed reckless disregard for the matter." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Acting only "unreasonably" is insufficient—some degree of actual awareness is necessary. Id. at 135 n.13, 108 S.Ct. 1677. To prove willfulness, a plaintiff must put forth at least some evidence of the employer's awareness of a violation of the FLSA overtime mandate. Souryavong v. Lackawanna Cty., 872 F.3d 122, 127 (3d Cir. 2017) (citing, Flores v. City of San Gabriel, 824 F.3d 890, 907 (9th Cir. 2016)).

In the present case, Defendant City has been fully aware of its legal obligation to pay Plaintiffs overtime, yet continues to fail to do so. Around October or November 2018, a first-step meeting occurred involving Plaintiffs' complaints that they were not being compensated for the off-duty maintenance and care of their K9 Partners. (Exhibit K, Coulter Dep. at 46, 6-16). On December 12, 2018, after the first-step meeting took place, Officer. McGrody submitted a formal grievance on behalf of the K-9 Unit memorializing that the members of the K9 Unit were not being properly compensated for the time and effort put forth in the maintenance and care of their K9 Partners. (Exhibit L, Grievance). Upon receipt of the initial grievance, the City held a meeting with labor and law regarding the grievance. (Exhibit K, Coulter Dep. at 14, 22-24; 15, 1-3). Despite filing a grievance, Plaintiffs have not been compensated overtime for the care and maintenance of their K9 Partners. (Exhibit K, Coulter Dep. at 15, lines 4-8; 37, 4-10). In fact, the grievance is still open and pending in arbitration. (Exhibit C, LaSalle Dep at 28, lines 19-21).

Despite being on notice since 2018 of its failure to pay Plaintiffs for the off-duty care and maintenance of the K9 Partners and believing Plaintiffs should receive compensation since the

care of the K9 Partners is part of Plaintiffs' job duties, Defendant City has not compensated Plaintiffs. As such, Defendant City's violation of the FSLA is willful and Plaintiffs are entitled to a three-year liability period.

**D. Plaintiffs are Entitled to Liquidated Damages under the FLSA because Defendant City is not Entitled to a Liquidated Damages Defense**

When an employer violates the overtime provisions of the FLSA, Section 216(b) provides for payment of both unpaid wages and the equivalent amount in "mandatory" liquidated damages. 29 U.S.C. § 216(b); Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991). The Third Circuit Court of Appeals has held that the Secretary "need not establish an intentional violation of the Act to recover liquidated damages." Williams v. Tri-Cly. Growers, Inc., 747 F.2d 121, 129 (3d Cir. 1984). Rather, liquidated damages are compensatory and the norm in FLSA actions. Martin, 940 F.2d at 907.

Section 11 of the Portal-to-Portal Act provides a defense to liquidated damages. 29 U.S.C. § 260. In order to invoke such defense, the employer must "show to the satisfaction of the court that the act or omission giving rise to [an] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. The employer bears the burden to demonstrate why it is entitled to this relief. Martin, 940 F.2d at 907-908.

To meet its burden, an employer must establish that it made a subjective good faith effort to comply with the FLSA and had objectively reasonable grounds to believe it complied with applicable law. Lugo v. Farmer's Pride Inc., 802 F. Supp. 2d 598, 612 (E.D. Pa. 2011). "Whether an employer's conduct under the FLSA was in good faith and reasonable is a mixed question of law and fact." Id. at 616 (citing Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007)).

11

Defendant City has not taken sufficient actions to afford itself a defense to liquidated damages. In 2018, Officer McGrody filed a formal grievance behalf of the K-9 Unit memorializing that the members of the K9 Unit were not being properly compensated for the time and effort put forth in the maintenance and care of their K9 Partners. (Exhibit L, Grievance). Upon receipt of the grievance, Defendant City held a meeting with labor and law regarding the grievance. (Exhibit K, Coulter Dep. at 14, 22-24; 15, 1-3). Despite meeting with labor and law, Defendant City never took any action to remedy Plaintiffs' grievance. In fact, the grievance is still open and pending in arbitration. (Exhibit C, LaSalle Dep at 28, 19-21). Therefore, from 2018 and onward, Plaintiffs have not been compensated for the off-duty care and maintenance of their K9 Partners.

Therefore, summary judgment should be granted as to liquidated damages because Defendant City cannot demonstrate it made a subjective good faith effort to comply with the FLSA and had objectively reasonable grounds to believe it complied with applicable law.

## IV.    **CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that the Court grant its Motion for Summary Judgment.