## **PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS**

1. Plaintiffs were hired by Defendant as police officers. (Exhibit A, Complaint at ¶ 64).

2. Plaintiffs are assigned to the K9 Unit. (Exhibit A, Complaint at ¶ 65).

3. Plaintiffs are expected to care for their K9 Partners, which includes, but is not limited to, walking and exercising the dogs multiple times on a daily basis, feeding, grooming, training, coordinating veterinary care, ensuring that the dogs interact safely with all other residents of the home, human or animal, securing the home and ensuring it remains secure so the K9 Partner cannot get out, in addition to other responsibilities. (Exhibit A, Pl. Complaint at ¶ 66; Exhibit B, Standard Operating Procedures at 14-15).

4. Plaintiff Joseph O'Reilly has been a police officer in the K9 Unit for approximately six years. (Exhibit D, Plaintiff O'Reilly Dep at 9, 11-14).

5. Plaintiff Joseph O'Reilly has two K9 Partners. (Exhibit A, Complaint at ¶ 69).

6. Plaintiff Joseph O'Reilly's off-the-clock K9 care includes walking, exercising, feeding, cleaning and grooming his K9 partners, cleaning his vehicle and home from dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partners. (Exhibit A, Complaint at ¶ 69(a), (b); Exhibit D, Plaintiff O'Reilly Dep at 19, 3-5; 23, 8-19; 42, 16-19; 44, 14-24; 45, 8-24; 46, 1-10; 51, 18-22; 53, 2-7; 54, 2-8; 61, 8-11; 62, 6-12; 66, 12-24; 67, 1-5; 68, 3-16).

7. Throughout the course of Plaintiff Joseph O'Reilly's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partners. (Exhibit A, Complaint at ¶ 70).

8. Plaintiff Richard Treston has worked for the K9 Unit for approximately twenty years. (Exhibit I, Plaintiff Treston Dep at 6, 16-18).

9. Plaintiff Richard Treston has two K9 Partners. (Exhibit A, Complaint at ¶ 71).

10. Plaintiff Richard Treston's off-the-clock K9 care includes walking, feeding, exercising and observing his K9 Partners, applying medicine to his K9 Partners, vacuuming and cleaning his home from dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partners. (Exhibit A, Complaint at ¶ 71(a)-(c); Exhibit I, Plaintiff Treston Dep at 22, 9-24; 25, 13-16; 26, 9-13; 31, 16-20; 32, 13-15; 33, 21-22; 34, 20-21; 35, 3-7; 36, 15-22; 37, 9-13, 16-19, 22-24; 38, 1-3, 16-18; 40, 8-9; 43, 6-9; 44, 3-5; 46, 15-20; 48, 20-23).

11. Throughout the course of Plaintiff Richard Treston's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partners. (Exhibit A, Complaint at ¶ 72).

12. Plaintiff Janie DiPasquale has two K9 Partners in her home, but only cares for one. (Exhibit A, Complaint at ¶ 73).

13. Plaintiff Janie DiPasquale's off-the-clock K9 care includes walking, feeding, exercising, observing her K9 partner, vacuuming and cleaning her home of dog debris, cleaning her K9 Partner's kennel, performing article searches with her K9 Partner, vetting, procuring food, and dealing with health or medical conditions of her K9 Partner. (Exhibit A, Complaint at ¶ 73(a)-(c)).

14. Despite being Injured on Duty, Plaintiff Janie DiPasquale continues to provide the same care and responsibilities for her K9 Partner. (Exhibit A, Pl. Complaint at ¶ 73((c)).

15. Throughout the course of Plaintiff Janie DiPasquale's employment with Defendant, she has never received overtime compensation for the at home care of her K9 Partner. (Exhibit A, Complaint at ¶ 74).

16. Plaintiff Nick DiPasquale has two K9 Partners at his home, but only cares for one. (Exhibit A, Complaint at ¶ 75).

17. Plaintiff Nick DiPasquale's off-the-clock K9 care includes walking, feeding, exercising, observing his K9 partner, administering oral and topical medications and injections to his K9 Partner, cleaning and vacuuming his cars of dog debris, cleaning his K9 Partner's kennel, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 75(a)-(b)).

18. Throughout the course of Plaintiff Nick DiPasquale's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 76).

19. Plaintiff Michael Cahill has worked in the K9 Unit for about fifteen years. (Exhibit E, Plaintiff Cahill Dep at 9, 5-8).

20. Plaintiff Michael Cahill has one K9 partner at home. (Exhibit A, Complaint at ¶ 77).

21. Plaintiff Michael Cahill's off-the-clock K9 care includes walking, feeding, grooming, and exercising his K9 partner, cleaning his home, car, and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 77(a)-(b); Exhibit E, Plaintiff Cahill Dep at 56, 15-24; 57, 1-13; 59, 3-10; 59, 21-24).

22. Throughout the course of Plaintiff Michael Cahill's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 78).

23. Plaintiff Horace Lopez has been a police officer in the K9 Unit for approximately four years. (Exhibit F, Plaintiff Lopez Dep at 7, 7-9).

24. Plaintiff Horace Lopez has one K9 Partner at home. (Exhibit F, Complaint at ¶ 79).

25. Plaintiff Horace Lopez's off-the-clock K9 care includes walking, feeding, grooming, and exercising his K9 partner, cleaning his home and car of dog debris, vetting, procuring food, and

dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 79(a)-(b); Exhibit F, Plaintiff Lopez Dep at 17, 16-24; 19, 22; 20, 3-10; 21, 10-13, 20-21; 26, 2-6; 28, 5-7; 29, 12-19; 30, 12-14; 31, 7-9; 48, 5-18; 49, 12-17).

26. Throughout the course of Plaintiff Horace Lopez's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 80).

27. Plaintiff Justin O'Brien has one K9 Partner at home. (Exhibit A, Complaint at ¶ 81).

28. Plaintiff Justin O'Brien's off-the-clock K9 care includes walking, feeding, grooming, and exercising his K9 partner, cleaning his home and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 81(a)-(b)).

29. Throughout the course of Plaintiff Justin O'Brien's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 82).

30. Plaintiff Brian Quirple has one K9 Partner at his home. (Exhibit A, Complaint at ¶ 83).

31. Plaintiff Brian Quirple's off-the-clock K9 care includes walking, feeding, grooming, exercising his K9 partner, cleaning his home, car, and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 83(a)-(b)).

32. Throughout the course of Plaintiff Brian Quirple's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 84).

33. Plaintiff William Suarez has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 84).

34. Plaintiff William Suarez's off-the-clock K9 care includes walking, feeding, grooming, and exercising his K9 partner, cleaning his home, car, and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 85 (a)-(b)).

35. Throughout the course of Plaintiff William Suarez's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 86).

36. Plaintiff James Zimmerman has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 87).

37. Plaintiff James Zimmerman's off-the-clock K9 care includes walking, feeding, grooming, and exercising his K9 partner, cleaning his home, car, and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 87 (a)-(b)).

38. Throughout the course of Plaintiff James Zimmerman's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 88).

39. Plaintiff Dennis Baker has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 89).

40. Plaintiff Dennis Baker's off-the-clock K9 care includes walking, feeding, grooming, administering medication, and exercising his K9 partner, cleaning his home, car, and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 89 (a)-(b)).

41. Throughout the course of Plaintiff Dennis Baker's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 90).

42. Plaintiff Rodney Poliard has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 91).

43. Plaintiff Rodney Poliard's off-the-clock K9 care includes walking, feeding, grooming, and exercising his K9 partner, cleaning his home, car, and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 91 (a)-(c)).

44. Throughout the course of Plaintiff Rodney Poliard's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 92).

45. Plaintiff Kenneth Kustra has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 93).

46. Plaintiff Kenneth Kustra's off-the-clock K9 care includes walking, feeding, overseeing his K9 Partner's eating, grooming, administering medication, exercising his K9 partner, loading his K9 Partner into and out of his car, cleaning his yard and carpet of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 93 (a)-(c); Exhibit G, Plaintiff Kustra Dep at 11, 1-5; 12, 4-17; 14, 11-17; 21, 7-9; 23, 15; 24, 13-21; 28, 6-12; 30, 7-11; 34, 16-24; 35, 12; 42, 8-10 ).

47. Throughout the course of Plaintiff Kenneth Kustra's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 94).

48. Plaintiff Joseph Mangold has one K9 partner in his home as well as his previous K9 Partner, who is now retired. (Exhibit A, Complaint at ¶ 95).

49. Plaintiff Joseph Mangold's off-the-clock K9 care includes walking, feeding, grooming, and exercising/playing with his K9 partner, cleaning his home, yard, and car of dog debris, ad vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 95 (a)-(b)).

50. Throughout the course of Plaintiff Joseph Mangold's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partners. (Exhibit A, Complaint at ¶ 96).

51. Plaintiff Edward Moyer had both two K9 Partners and one K9 Partner in his home at various times. (Exhibit A, Complaint at ¶ 97).

52. Plaintiff Edward Moyer's off-the-clock K9 care included walking, feeding, grooming, and exercising/playing with his K9 partner, cleaning his home and yard of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Pl. Complaint at ¶ 97 (a)-(b)).

53. Throughout the course of Plaintiff Edward Moyer's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partners. (Exhibit A, Complaint at ¶ 98).

54. Plaintiff John Snyder has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 99).

55. Plaintiff John Snyder's off-the-clock K9 care included walking, feeding, grooming, and exercising with his K9 partner, cleaning his home, yard, car, and crate of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 99 (a)-(b)).

56. Throughout the course of Plaintiff John Snyder's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partners. (Exhibit A, Complaint at ¶ 100).

57. Plaintiff Sean Elkins has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 101).

58. Plaintiff Sean Elkins' off-the-clock K9 care includes walking, feeding, grooming, and exercising/playing with his K9 partner, cleaning his yard, crate, car, and home of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 101 (a)-(b)).

59. Throughout the course of Plaintiff Sean Elkins' employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partners. (Exhibit A, Complaint at ¶ 102).

60. Plaintiff Paul Sulock has been with the K9 Unit for approximately three years. (Exhibit K, Plaintiff Sulock Dep at 6, 21-23).

61. Plaintiff Paul Sulock has one K9 partner in his home. (Exhibit A, Complaint at ¶ 103).

62. Plaintiff Paul Sulock's off-the-clock K9 care includes walking, feeding, grooming, and exercising/playing with his K9 partner, cleaning his yard of dog debris, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 103 (a)-(b); Exhibit K, Plaintiff Sulock Dep at 10, 4-17; 16, 8-9, 21; 17, 12; 19, 12-18; 20, 19-24; 24, 1-8, 12-14; 26, 4-5, 13-15.

63. Throughout the course of Plaintiff Paul Sulock's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 104).

64. Plaintiff Curtis Hill has one K9 Partner in his home. (Exhibit A, Complaint at ¶ 105).

65. Plaintiff Curtis Hill's off-the-clock K9 care includes walking, feeding, grooming, and exercising/playing with his K9 partner, cleaning his home, crate, and car of dog debris, vetting, procuring food, and dealing with health or medical conditions of his K9 Partner. (Exhibit A, Complaint at ¶ 105 (a)-(b)).

66. Throughout the course of Plaintiff Paul Sulock's employment with Defendant, he has never received overtime compensation for the at home care of his K9 Partner. (Exhibit A, Complaint at ¶ 106).

67. On December 12, 2018, Plaintiffs filed a grievance expressing that they were "not being properly compensated for the time and effort put forth in the maintenance care of their K9 Partners." (Exhibit L, Grievance dated December 12, 2018).

68. The December 12, 2018 grievance is still open and pending. (Exhibit J, McGrody Dep. at 28, 14-21).

69. Despite filing a grievance, Plaintiffs have not been compensated for the care and maintenance of their K9 Partners. (Exhibit K, Coulter Dep. at 15, 4-8; 37, 4-10).

70. Throughout the course of their employment, Plaintiffs have not been paid overtime for the care and maintenance of their K9 Partners. (Exhibit J, McGrody Dep. at 18, 17-20; Exhibit C, LaSalle Dep. at 20, 15-20; Exhibit K, Coulter Dep. at 15, 9-17; 60 at 15-21).

71. The care of their K9 Partners is a part of Plaintiffs' job duties. (Exhibit J, McGrody Dep. at 29, 10-11).

72. Plaintiffs are responsible for the care of their K9 partners both on and off duty. (Exhibit B, Standard Operating Procedures at 14-15; Exhibit C, LaSalle Dep. at 11, 23-24; 12, 1-2; 24, 1-6).

73. Plaintiffs' off duty tasks include housing and caring for their K9 partners, maintaining their K9 Partner's health and well-being, cleaning up after them, and providing a safe home

environment for them. (Exhibit B, Standard Operating Procedures at 14-15; Exhibit K, Coulter Dep. at 26, 6-11; Exhibit C, LaSalle Dep. at 12, 6-9).

74. Plaintiffs must care, feed, water, groom, exercise their K9 partners, administer any medicines or supplements, and ensure that the K9 partner is not injured or does not injure anyone else while off duty. (Exhibit B, Standard Operating Procedures at 14-15; Exhibit C, LaSalle Dep. at 12, 15-23).

75. Plaintiffs must care for their K9 partners on their days off and weekends. (Exhibit B, Standard Operating Procedures at 14; Exhibit C, LaSalle Dep at 24, 10-12).

76. The upkeep and maintenance of the K9 Partner is related to Plaintiffs' work responsibilities and duties. (Exhibit C, LaSalle Dep at 24, 13-16).

77. When Plaintiffs are off duty, they are expected to have their K9 Partner with them. (Exhibit B, Standard Operating Procedures at 14-15; Exhibit K, Coulter Dep. at 26, 12-22; 39, 3-6; Exhibit C, LaSalle Dep at 25, 23-24).

78. The Standard Operating Procedures, Orders, Directives, and USPCA Manual 2020 ("SOP") explicitly states that the K9 partner is to be housed with their human partners at their residence. (Exhibit B, Standard Operating Procedures at 14-15; Exhibit C, LaSalle Dep at 28, 10-